IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

TIMMY R. GREEN                                                                          PLAINTIFF

v.                          NO. 3:20-cv-00322 PSH

KILOLO KIJAKAZI, Acting Commissioner                                   DEFENDANT
of the Social Security Administration

### MEMORANDUM OPINION AND ORDER

Plaintiff Timmy R. Green ("Green") challenges the denial of his application for disability insurance benefits and does so on two grounds. Green first maintains that the Administrative Law Judge ("ALJ") committed error at step two of the sequential evaluation process when he erroneously evaluated Green's mental impairments. Green also maintains that his residual functional capacity was erroneously assessed with respect to the extent to which he can use his left hand. Because substantial evidence on the record as a whole supports the ALJ's decision, and he committed no legal error, his decision is affirmed.[1]

---

[1] The question for the Court is whether the ALJ's findings are supported by "substantial evidence on the record as a whole and not based on any legal error." See Sloan v. Saul, 933 F.3d 946, 949 (8th Cir. 2019).

The record reflects that Green was born on August 24, 1965, and was fifty-two years old on February 12, 2018, the alleged onset date. In his application for disability insurance benefits, he alleged that he is disabled as a result of, <u>inter</u> <u>alia</u>, an injury to his left hand and mental impairments in the form of depression and anxiety.

Green represents that the "relevant medical evidence in this case begins on February 12, 2018." <u>See</u> Docket Entry 19 at CM/ECF 2.[2] On that day, he was working in garbage removal when his left hand got pinned between a garbage truck and a dumpster, resulting in a "[l]eft fourth metacarpal fracture." <u>See</u> Transcript at 341. Green was admitted to an area hospital where Dr. Merwin Moore, M.D., ("Moore") performed an open reduction and internal fixation. <u>See</u> Transcript at 341. Norco was prescribed for pain. Green represents that "[h]e was set to return to work in two weeks." <u>See</u> Docket Entry 19 at CM/ECF 2.

On February 20, 2018, Green saw Moore for a follow-up examination. <u>See</u> Transcript at 458-459. A review of Green's systems was unremarkable, save moderate swelling, decreased sensation, and painful range of motion in his left hand. He was instructed to remain off work and avoid any lifting.

---

[2]    Because Green's challenges to the ALJ's findings only involve Green's left hand impairment and his mental impairments, the Court will limit the review of the medical evidence to those impairments.

On April 19, 2018, Green saw a certified physician assistant, Alex Baker for complaints of left hand pain. See Transcript at 454-455. Green reported that he was doing well following the surgery but had recently changed a flat tire and began experiencing pain, swelling, and numbness in his left hand. X-rays were taken and revealed a "failure of hardware plate with non-healed fracture site." See Transcript at 454. The following day, he underwent a revised open reduction and internal fixation with bone grafting of his left fourth metacarpal. See Transcript at 452.

Green saw Moore on May 10, 2018. See Transcript at 452-453. At the presentation, Green reported that he was doing well and getting some feeling back in his left hand. He was continued on Norco and instructed to do gentle movements of his hand but refrain from heavy lifting.

The subsequent medical evidence relevant to Green's left hand impairment is minimal. On December 11, 2018, an EMG study showed moderate median compromise to his left wrist. See Transcript at 513.

Green represents that there is also a "mental component to this case." See Docket Entry 19 at CM/ECF 3. On November 20, 2018, Green was seen by Dr. Samuel Hester, Ph.D. ("Hester") for a mental diagnostic evaluation. See Transcript at 466-474. Green's mental allegations were recorded to be as follows:

> ... Green ... reports that he has been diagnosed with cognitive disorder due to history of being a kick boxer and having many concussions. He has been in and out of mental health treatment since about [twenty-three-years-old]. He has been in rehab six times for crack cocaine abuse. He has been clean for ten years now. He was in 12 steps for years but not for some time now. Most of his mental health treatment has been thru rehabs. He was a CDL truck driver for the past 25 years. He reports that he has history of panic attacks but has never been diagnosed nor treated.

See Transcript at 466. Green reported that he last worked about four months earlier but was terminated because of his poor memory. His appearance, general attitude, affect, speech, thought process, thought content, and cognition were all unremarkable, although he did appear slightly anxious. The results of testing were also unremarkable. Hester's diagnoses were as follows: "R/O cognitive disorder by history;" "R/O anxiety disorder, NOS;" and "cocaine abuse in reported full sustained remission." See Transcript at 471. As to the effects of the impairments on Green's adaptive functioning, Hester opined the following:

> The claimant was able to drive short distances. The claimant was reportedly able to perform most ADL's autonomously. He does none of the shopping nor bill paying. He does not participate in social groups.
>
> The claimant has a limited capacity to communicate and interact in a socially adequate manner.

> The claimant has the capacity to communicate in an intelligible and effective manner.
>
> The claimant may not be able to cope with the mental demands of basic work tasks until he seeks treatment for his reported panic disorder.
>
> The claimant has the ability to attend to and sustain concentration on basic tasks.
>
> The claimant has the ability to sustain persistence in completing tasks.
>
> The claimant can complete work tasks within an acceptable timeframe if [he] will seek treatment.

See Transcript at 471-472.

Green was seen for his mental impairments at Ozark Guidance between January 2, 2019, and December 17, 2019. See Transcript at 48-62, 476-494, 540-546. The progress notes reflect that he has experienced severe depressive episodes, mostly related to relationship issues. He has been married six times. He typically reported, inter alia, depression, anxiety, and panic attacks. His medication included mirtazapine for depression and Invega for mood stability. His judgment, insight, attention, concentration, and orientation were typically within normal limits, although his affect was typically constricted and his mood depressed. His diagnoses included bipolar disorder and a generalized anxiety disorder.

Green was also seen for his mental impairments in 2019 at Access Medical Clinic. See Transcript at 35-45. The progress notes reflect that his mood and affect were typically normal, and he was active and alert. He did, however, complain of depression and sleep disturbances. He reported doing well with Invega.

Green's medical records were reviewed by state agency medical consultants. See Transcript at 130-141, 143-158. The consultants opined, inter alia, that he is capable of work at the light exertional level but did not have a medically determinable mental impairment.

The record contains a summary of Green's work history. See Transcript at 235-248. The summary reflects that he has a sporadic work history.

Green completed a function report in connection with his application for disability insurance benefits. See Transcript at 276-283. In the report, he represented that he is able to attend to his personal care, although he has difficulty with buttons and zippers and must lay down to shower. He mows his own lawn, tends to a small garden, shops for groceries and household needs, and tends to his financial affairs. His hobbies include playing the piano, fishing, camping, yard work, and wood working, although he does not do the activities as frequently as he once did.

Green testified during the administrative hearing. See Transcript at 63-89. During the hearing, his attorney asked to amend the alleged onset date to July 2, 2019, as Green had attempted to return to work in 2019. See Transcript at 66, 89. Green was fifty-four years old and last worked for a company that did industrial sewing, primarily repairing boat seats. His longest period of employment was as a long-distance truck driver. Green still has "a lot of trouble" with his left hand. See Transcript at 72. He also has difficulty sleeping because of his racing thoughts and nightmares. He also has difficulty concentrating and developed a cognitive disorder in 2010 as a results of his substance abuse and repeated blows to his head while kick boxing. He estimated that he was knocked out eight times during his kick boxing career. Green testified that he also experiences panic attacks and anxiety, making it difficult to leave his home. He has also attempted suicide on three occasions.

The ALJ found at step two that Green's severe impairments include a broken left hand, status post repair, but do not include a mental impairment. The ALJ assessed Green's residual functional capacity and found that Green is capable of light work, except he can only occasionally stoop, crouch, and overhead reach. The ALJ found that although Green has no past relevant work, there is other work he can perform.

Green first maintains that the ALJ committed error at step two when the ALJ erroneously evaluated Green's mental impairments. Green notes that he has "consistently and clearly alleged mental/cognitive impairments," and "[t]hey should have been recognized as such." See Docket Entry 19 at CM/ECF 6, 7.

At step two, the ALJ must identify the claimant's impairments and determine if they are severe. An impairment is severe if it has "more than a minimal effect on the claimant's ability to work." See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) (internal quotations omitted).

Substantial evidence on the record as a whole supports the ALJ's finding that Green's mental impairments are not severe impairments. The Court so finds for three reasons. First, the determination at step two is a medical determination, see Bowen v. Yuckert, 482 U.S. 137 (1987), and there is little medical evidence that Green's mental impairments have more than a minimal effect on his ability to work. Hester's diagnoses were simply "R/O cognitive disorder by history;" "R/O anxiety disorder, NOS;" and "cocaine abuse in reported full sustained remission." See Transcript at 471. Although Green was eventually diagnosed with bipolar disorder and a generalized anxiety disorder, the evidence supporting the diagnoses is minimal and appears to have been made on the basis of his self-reports.

Second, to the extent there is medical evidence relevant to the severity of Green's mental impairments, it is unremarkable. His depressive episodes were largely related to relationship issues. Moreover, the mental impairments give rise to few meaningful functional limitations. Hester opined that Green has a "limited" capacity, as opposed to a complete inability, to communicate and interact in a socially adequate manner. See Transcript at 472. Hester also opined that Green "may not be able" to, as opposed to being completely unable to, cope with the mental demands of basic work tasks until he seeks treatment for his "reported" panic disorder. See Transcript at 472. Hester additionally opined that Green is able to perform most activities of daily living, communicate in an intelligible and effective manner, attend to and sustain concentration, sustain persistence, and complete work tasks within an acceptable timeframe if he seeks treatment.

Third, the ALJ's failure to identify Green's mental impairments as severe impairments at step two is ultimately of little legal significance. Once the ALJ proceeds past step two, as he did here, the labeling of an impairment as "severe" or "non-severe" has little legal significance because the ALJ must consider all of the claimant's impairments in crafting the residual functional capacity. See 20 C.F.R. 416.945(e).

Green offers a second reason why the ALJ's findings are not supported by substantial evidence on the record as a whole. Green maintains that his residual functional capacity was erroneously assessed with respect to the extent to which he can use his left hand.

The ALJ is required to assess the claimant's residual functional capacity, which is a determination of the most the claimant can do despite his limitations. See Brown v. Barnhart, 390 F.3d 535 (8th Cir. 2004). The ALJ cannot rely solely upon the medical evidence in assessing a claimant's residual functional capacity; instead, the ALJ must evaluate all of the evidence in making the assessment. See Grindley v. Kijakazi, 9 F.4th 622 (8th Cir. 2021).

Having reviewed the record, the Court finds that the ALJ did not err in assessing Green's residual functional capacity. Specifically, the ALJ did not err in evaluating the extent to which Green can use his left hand. The Court so finds for two reasons.

First, the ALJ adequately evaluated the medical evidence. The ALJ could and did find that Green's April 20, 2018, revised open reduction and internal fixation with bone grafting of his left fourth metacarpal was successful, and Green thereafter sought no additional medical attention for his left hand impairment.

Second, the ALJ adequately evaluated the non-medical evidence. The ALJ could and did find that Green's daily activities include mowing his own lawn with a riding mower, tending a garden, shopping for groceries, and driving an automobile, a finding supported by Hester. Green appears to take no medication for his left hand impairment and does not appear to receive treatment, other than medication, for the impairment.[3] It is also worth noting that Green appears to be right-handed. See Docket Entry 20 at CM/ECF 8.

It is not the role of the Court to re-weigh the evidence and, even if this Court would decide the case differently, it cannot reverse the ALJ's decision if that decision is supported by good reason and is based on substantial evidence. See Dillon v. Colvin, 210 F.Supp.3d 1198 (D.S.D.

---

[3] In evaluating the intensity, persistence, and limiting effects of a claimant's pain or other symptoms, the ALJ must consider all the evidence, including evidence of the following:

> (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment a claimant uses or has used to relieve pain or other symptoms ...; and (7) any other factors concerning a claimant's functional limitations and restrictions due to pain or other symptoms.

See Social Security Ruling 16-3p. See also 20 CFR 404.1529; Polaski v. Heckler, 751 F.3d 943 (8th Cir. 1984) (identifying factors substantially similar to those of Social Security Ruling 16-3p).

2016). In fact, the Court may not reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision. See Id. Here, the ALJ could find as he did with respect to Green's left hand impairment.

In conclusion, the Court finds that there is substantial evidence in the record as a whole to support the ALJ's findings, and he did not commit legal error. Green's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this 12th day of January, 2022.

_____
UNITED STATES MAGISTRATE JUDGE